IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11cr304 |
| | ) | **Electronic Filing** |
| DANIEL YOUNG | ) | |

## MEMORANDUM ORDER

AND NOW, this 6th day of February, 2014, upon due consideration of the matters raised in the government's motion for preliminary order of criminal forfeiture against Daniel Young and defendant's opposition thereto, IT IS ORDERED that [98] the government's motion be, and the same hereby is, granted. All of the rights, title and interest of Daniel Young in the property identified in the jury's special verdict of July 19, 2013 (Doc. No. 93) is forfeited to the United States.

Defendant was charged with and convicted by jury of one count of conspiracy in violation of 18 U.S.C. § 371 and three counts of structuring currency transactions in violation of 31 U.S.C. § 5324. After the verdict was returned, the parties presented evidence and argument to the jury on whether the property identified in the forfeiture allegations was involved in an offense of conviction or is traceable to property involved in an offense of conviction. The jury returned a special verdict finding by a preponderance of evidence that the following pieces of property were involved in or traceable to an offense of defendant's conviction: (1) 2008 Dodge Truck, VIN 1D7HW38K18530105, PA Reg. VYT-5335; (2) 2007 John Deere 2520 Tractor, VIN LV2520H306397; (3) 2008 Front End Loader, VIN JCB08030P81230037; (4) Real property located at 2671 Route 136, Eighty Four, PA; (5) Real property located at 411-413 Parkinson

1

Street, Monongahela, PA; and (6) a sum of money in the amount of $243,859.

The government now seeks the criminal forfeiture of defendant's interest in such property pursuant to 31 U.S.C. § 5317(c)(1)(A). Section 5317(c)(1)(A) provides that "[t]he court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto." Defendant contends that forfeiture of any assets would constitute an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment, which "limits the government's power to extract payments, whether in cash or in kind, as *punishment* for some offense." *Austin v. United States*, 509 U.S. 602, 609-610 (1993) (internal citation omitted, emphasis in original).

Both the government and defendant agree that forfeiture is a "fine" within the meaning of the Eighth Amendment's Excessive Fines Clause and that in certain circumstances forfeiture can violate that Clause. *See United States v. Bajakajian*, 524 U.S. 321 (1998).[1] A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense it is designed to punish. *Id.* at 333 ("The touchstone of the constitutional inquiry under the

---

[1] In *Bajakajian,* the defendant was arrested in Los Angeles International Airport while attempting to board a flight to Italy with $357,144 in undeclared cash hidden in his and his family members' luggage. *Bajakajian,* 524 U.S. at 324–25. He was charged with one count of willfully failing to report that he was transporting more than $10,000 outside the United States, one count of making a false material statement to the United States Customs Service, and a third count which sought forfeiture of the $357,144. *Id.* at 325. The defendant pled guilty to the first charge, the second charge was dismissed, and a bench trial was held on the forfeiture allegation. *Id.* At the conclusion of the bench trial, the district court acknowledged that the entire sum involved in the offense was subject to forfeiture. *Id.* at 326. However, because of the disproportionality between the crime and the requested forfeiture amount of $357,144, the district court ordered that defendant forfeit only $15,000. Both the Ninth Circuit and the Supreme Court affirmed.

Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.").

In deriving a constitutional extensiveness standard of "gross disproportionality," the *Bajakajian* Court relied primarily on two considerations. First, judgments about the appropriate punishment for an offense belong in the first instance to the legislature. *Id.* at 336 (citing *Solem v. Helm*, 462 U.S. 277, 290 (1983) ("Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.")). Second, any judicial determination regarding the gravity of a particular criminal offense necessarily will be imprecise. *Bajakajian*, 524 U.S. at 336. These considerations counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense. *Id.*

An analysis of four factors is required to determine whether the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense: (1) the essence of the substantive crime and its relation to other illegal activity; (2) whether the defendant fit into the class of persons for whom the statute principally was designed (*e.g.*, money launderers, drug dealers or tax evaders); (3) a comparison of the amount the government sought to forfeit with the maximum fine permitted under the statute; and (4) the extent of the harm caused by defendant. *Id.* at 338–39; *accord United States v. Cheeseman*, 600 F.3d 270, 283-284 (3d Cir. 2010) (applying *Bajakajian* factors).

Applying each of these factors to the instant case, the forfeiture of defendant's properties, vehicles and equipment is not grossly disproportional to his 18 U.S.C. § 371 and 31 U.S.C. § 5324 violations. Therefore, it does not constitute an excessive fine in violation of the Excessive

Fines Clause.

The first factor for consideration is the essence of defendant's substantive crime and its relation to other criminal activity. Bajakajian's crime was solely a reporting offense. It was permissible for Bajakajian to transport the currency out of the country so long as he reported it. Thus, the essence of his crime was a willful failure to report the removal of currency from the United States. Furthermore, Bajakajian's crime was unrelated to other illegal activities. The money was the proceeds of legal activity and was to be used to repay a lawful debt. *Bajakajian*, 524 U.S. at 337-338.

In the instant case, defendant's crime was much more extensive than a mere reporting offense. Over the course of two years defendant engaged in an ongoing conspiracy to structure currency transactions to avoid triggering federal reporting requirements. As part of the conspiracy defendant structured and caused the structuring of cash deposits into accounts held at various banks. The deposits were made in connection with purchases of real property, vehicles and heavy equipment. As part of this scheme defendant, along with the coconspirators he enlisted, obtained multiple cashier's checks, made deposits to accounts at various financial institutions and paid for large purchases in cash. All of these transactions were under $10,000 in an attempt to evade the reporting requirements of 31 U.S.C. § 5313 and its corresponding regulations.

Moreover, defendant's crime was related to other criminal activity – drug dealing. Defendant amassed two recent convictions in the Court of Common Pleas of Washington County, one for delivering nine grams of powder cocaine to a confidential informant on nine separate occasions and another for possession with intent to distribute seven grams of powder

4

cocaine on a separate occasion. Defendant was sentenced to 12 to 24 years of state incarceration for these convictions.

Furthermore, evidence of defendant's involvement with drug trafficking was submitted to the jury in the instant prosecution. It was admitted on the theory that it was this source of illegal income that motivated defendant to structure the cash deposits and purchases at issue in this case.[2] Such evidence included testimony of Brian Tempest (Chief of Police for Monongahela), Brenda Harsh (a regular purchaser of cocaine from defendant for more than ten years) and Timothy Patterson (the husband of another regular cocaine purchaser). Each provided credible testimony as to defendant's significant drug dealing activity. Because defendant's structuring was related to other criminal activity, this factor weighs in favor of forfeiture.

The second *Bajakajian* factor is whether the defendant fit into the class of persons for whom the statute principally was designed. Bajakajian was convicted under 31 U.S.C. § 5316(a)(1)(A), a statute designed for money launderers, drug traffickers or tax evaders. Bajakajian, who wished to pay a lawful debt with the currency being transported, was none of these.

Defendant was convicted of one count of conspiracy under 18 U.S.C. § 371 and three counts of structuring under 31 U.S.C. § 5324, which has been described as "a reporting statute intended to facilitate the government's efforts to uncover and prosecute crime and fraud," noting that "[b]y forcing financial institutions to file CTRs, Congress hoped to maximize the information available to federal regulatory and criminal investigators. The overall goal of the

---

[2] This evidence was highly probative of motive and intent, which are permissible grounds for the use of such evidence under Federal Rule of Evidence 404(b). *See* Memorandum and Order of Court, July 15, 2013 (Doc. No. 88).

statute was to interdict the laundering of illegally obtained and untaxed monies in legitimate financial institutions." *United States v. Castello,* 611 F.3d 116, 122 (2d Cir. 2010) (citing *United States v. St. Michael's Credit Union*, 880 F.2d 579, 582 (1st Cir. 1989)).

It is precisely because of defendant's involvement with drug dealing that he was motivated to structure currency transactions to avoid triggering federal reporting requirements. Such reports could have prompted questions from the IRS as to the source of the money. Because defendant's scheme was designed to prevent the government from uncovering and prosecuting his criminal activity, he fits squarely into the class of persons for whom § 5324 principally was designed. This factor therefore weighs in favor of forfeiture.

The third factor considers the maximum fine and sentence that could have been imposed. There is a strong presumption of constitutionality where the value of the forfeiture falls within the fine range prescribed by Congress or the Guidelines. *United States v. Malewicka*, 664 F.3d 1099, 1106 (7th Cir. 2011); *United States v. Seher*, 562 F.3d 1344, 1371 (11th Cir. 2009).

In *Malewicka*, following defendant's conviction of 23 counts of structuring transactions in violation of 31 U.S.C. § 5324(a)(3), the government sought the forfeiture of $279,500. Pursuant to statute, Malewicka faced no more than five years in prison and a maximum statutory penalty of $250,000 on each count. Because Malewicka was convicted of 23 counts, the possible penalty totaled $5,750,000. Under the Guidelines Malewicka faced a period of incarceration of zero to six months and a maximum fine of $10,000. Because Malewicka's forfeiture amount fell within the statutory range, the court found no constitutional violation. *Malewicka*, 664 F.3d at 1107. *Compare Bajakajian*, 524 U.S. at 339 (forfeiture of $357,144 was excessive where defendant faced a maximum statutory fine of $250,000 and the Guidelines recommended a

maximum fine of $5,000).

Pursuant to 18 U.S.C. § 3571(b)(3), the maximum statutory punishment for each count of defendant's convictions under 18 U.S.C. § 371 and 31 U.S.C. § 5324(d)(1) is no more than five years in prison, a maximum statutory penalty of $250,000, or both. The combined maximum statutory fine for all four counts is therefore $1,000,000. Under the Guidelines, the fine range for defendant's convictions is $12,500 to $125,000. U.S.S.G. § 5E1.2(c)(3).[3]

The total value of the property the government seeks to forfeit is $446,244.[4] Although the forfeiture here would exceed the maximum guidelines range, it is well within the statutory range. The amount the government seeks to forfeit compared with the maximum fine permitted under the statutes therefore does not violate the Eighth Amendment.

Finally, the fourth factor examines the nature of the harm caused by the offense. In enacting the currency reporting statutes, such as the one at issue in *Bajakajian*, Congress sought to avoid damage to international trade and commerce. Incident to that concern was an appreciation that travelers are both a part of and creators of international trade and commerce. *United States v. Warren*, 612 F.2d 887, 891 (5th Cir. 1980) (citing H.R. Rep. No. 975, 91st Cong., 2d Sess., Reprinted in (1970) U.S. Code Cong. & Admin. News, pp. 4394, 4398.) ("The legislative history states: In devising legislation to repair this huge gap in law enforcement, your

---

[3] Based upon a total offense level of 26 and a criminal history category of I, defendant's guidelines range of imprisonment is 63 to 78 months.
[4] This amount is derived from: (1) 2008 Dodge Truck, VIN 1D7HW38K18530105, PA Reg. VYT-5335 (valued at $23,650); (2) 2007 John Deere 2520 Tractor, VIN LV2520H306397 (valued at $18,391); (3) 2008 Front End Loader, VIN JCB08030P81230037 (valued at $34,344); (4) Real property located at 2671 Route 136, Eighty Four, PA (equity valued at $97,000); (5) Real property located at 411-413 Parkinson Street, Monongahela, PA (valued at $38,000); and (6) a sum of money in the amount of $243,859.

7

committee considered it of high importance . . . not to create obstacles to the free flow of legitimate international trade and commerce.")). The *Bajakajian* Court reasoned that the harm caused by Bajakajian was minimal and affected only the government and in a relatively minor way. *Bajakajian*, 524 U.S. at 339 ("There was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.").

Here, defendant argues that "no harm befell the [government]" and to the extent that he caused any harm it was *de minimus*. *Malewicka's* consideration and rejection of this argument is apt:

> While it is true that [Malewicka's] acts deprived the government of nothing but information, this characterization greatly downplays the significance of her crime. Malewicka kept information regarding numerous transactions from the government over a period of years. The concerns underlying her crime were significant enough that Congress enacted a statute to ensure that such information is collected, and by concealing her withdrawals, she thwarted the bank's reporting duties. *See [United States v. Ahmad,* 213 F.3d 805, 817 (4th Cir. 2000)] ("Ahmad's deposit structuring activities not only caused the government to lose information, but also implicated an intermediary actor, the First Virginia Bank, and affected its legal duty to report certain transactions."). Moreover, section 5324's intent is to aid the government's efforts to uncover and prosecute crime and fraud. *Castello,* 611 F.3d at 122.

*Malewicka*, 664 F.3d at 1107. By structuring transactions to avoid reporting requirements, defendant not only frustrated the government's ability to uncover and prosecute crime effectively, he also affected the legal duties of third parties. Defendant's conduct was therefore unlike Bajakajian's: it was not minimal and did not only affect the government. This factor therefore weighs in favor of forfeiture.

Considering all of the factors, the forfeiture of defendant's properties, vehicles and equipment is not grossly disproportional to his 18 U.S.C. § 371 and 31 U.S.C. § 5324 violations.

Accordingly, it does not constitute an excessive fine in violation of the Eighth Amendment and the government's motion for preliminary forfeiture properly has been granted.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc: Brendan T. Conway, AUSA
   Noah Geary, Esquire

   (Via: CM/ECF Electronic Filing)